UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERTO VELAZQUEZ, et al.,<br><br>                              Plaintiffs,<br><br>             v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY, et al.,<br><br>                              Defendants. | Case No. EDCV 16-679-GHK (KK)<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS & DISMISSING PLAINTIFFS' FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |

**I.**

**INTRODUCTION**

Plaintiffs Gilberto Velazquez and Esperanza Velazquez ("Plaintiffs") have filed a pro se First Amended Complaint ("FAC") pursuant to Title 42 of the United States Code, section 1983.  Plaintiffs allege Defendants Pacific Gas and Electric Company and Does 1 through 10 violated Title 42 of the United States Code, Sections 1983 ("Section 1983") and 1985(3) ("Section 1985(3)").  Defendant Pacific Gas and Electric Company ("Defendant") filed a Motion to Dismiss the FAC ("Motion"), which the Court grants for the reasons below.

///

///

///

## II.

## BACKGROUND

On April 12, 2016, Plaintiffs filed a civil rights complaint ("Complaint") alleging Defendant violated (1) the Safe Drinking Water Act ("SDWA"); and (2) Plaintiffs' civil rights under Sections 1983, 1985(3), and 1986. See ECF Docket No. ("Dkt.") 1, Compl.

On June 10, 2016, Plaintiffs filed the FAC alleging Defendant violated Plaintiffs' civil rights under Sections 1983 and 1985(3). Dkt. 28, FAC. According to the FAC, Plaintiffs own real property in Hinkley, California. Id. at 6. Plaintiffs allege Defendant failed to remove hexavalent chromium from Hinkley's aquifers and the aquifers have "connection via private individual water well . . . made by similarly situated Plaintiff(s)." Id. at 7. Plaintiffs further allege Defendant poisoned Hinkley's aquifers "with URANIUM, in concentration way over 1000%, thus way over the EPA's legal limits." Id. at 14. Additionally, Plaintiffs allege Defendant caused the water beneath Plaintiffs' real property, "the only source of ground drinking" water to be "poisoned with ARSENIC, and URANIUM, way over the Federal and State EPA's legal limits." Id. at 12. Plaintiffs claim to have suffered "irreparable harm health injuries as a direct result of being poisoned with toxic chemicals by Defendant's operations." Id. at 6.

In addition, Plaintiffs allege Defendant "has performed CONCERTED, I[N]TERTWINED, AND JOIN[T] ACTIVITY'S ACTION with state actors" to poison water in Hinkley. Id. at 7. Plaintiffs further allege Defendant and state actors "conspired for the purpose of depriving Plaintiff(s) of equal protection of the law and for the purpose of preventing and hindering the constituted authorities from giving and securing to Plaintiff(s) equal protection of the law and deprivation of life, liberty and property without due process of law." Id. at 10. Plaintiffs also allege Defendant was "a willful participant in joint activity with the State or its agents" and violated Plaintiffs' "constitutional rights under color of law, in bad

2

1    faith, and with malicious purpose in reckless, wanton, and willful disregard of

2    Plaintiff(s) human, safety, and property rights." <u>Id.</u> at 4, 8.  Plaintiffs seek

3    monetary damages and costs.  <u>Id.</u> at 16-17.

4          On June 28, 2016, Defendant filed the Motion to Dismiss the FAC.  Dkt. 29-

5    1, Mot.  Defendant argues: (1) the SDWA preempts Plaintiffs' Section 1983 and

6    1985(3) claims; (2) Plaintiffs "allege neither membership in a protected class nor

7    invidious discrimination" in their Section 1985(3) claim; (3) Plaintiffs fail to allege

8    "they suffered injury as a result of [Defendant]'s concerted action with

9    government actors" in their Section 1983 claim; and (4) Plaintiffs claims are

10   untimely.[1] <u>Id.</u> at 2-8.  On July 12, 2016, Plaintiffs filed an Opposition.  Dkt. 34,

11   Opp.; Dkt. 35, Decl.; Dkt. 36, Mem. Points & Authorities.[2]  On July 21, 2016,

12   Defendant filed a Reply.  Dkt. 38, Reply.  This matter is thus submitted for

13   decision.

14   ///

15   ///

16   ///

17   ///

18

19   [1]     Because the Court finds the SDWA preempts Plaintiffs' Section 1983 and 1985(3) claims, the Court declines to address Defendant's other arguments.

20   [2]     Plaintiffs request the Court take judicial notice of the following documents, presumably in support of their Opposition: (1) <u>Holcroft v. Izbicki</u>, 2:16-cv-00528-

21   DMF (D. Ariz. filed Feb. 25, 2016), Dkt. 35, Judicial Notice; (2) <u>Holcroft v. Izbicki</u>, 2:16-cv-00528-DMF (D. Ariz. filed Feb. 25, 2016), Dkt. 36, Mot. to Dismiss; (3)

22   <u>Richards v. Izbicki</u>, 2:16-cv-00346-JCM-PAL (D. Nev. filed Feb. 16, 2016), Dkt. 38, Mot. to Dismiss; and (4) <u>Richards v. Izbicki</u>, 2:16-cv-00346-JCM-PAL (D. Nev.

23   filed Feb. 16, 2016), Dkt. 40, Notice. Dkt. 37, Req. Judicial Notice.

24         "A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment.  But a court

25   may not take judicial notice of a fact that is 'subject to reasonable dispute.'" <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689 (9th Cir. 2001) (internal citations omitted);

26   <u>see also</u> Fed. R. Evid. 201(b).  As an initial matter, Plaintiffs fail to explain what the documents would prove if the Court granted their request for judicial notice.  <u>See</u>

27   Dkt. 37, Req. Judicial Notice.  Further, to the extent Plaintiffs seek to prove the facts asserted in the documents, such facts are subject to reasonable dispute.  <u>See</u>

28   <u>Lee</u>, 250 F.3d at 689.  Accordingly, the Court DENIES Plaintiffs' Request for Judicial Notice without prejudice.

# III.

## LEGAL STANDARD

A complaint may be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Zamani v. Carnes, 491 F.3d 990, 996 (9th Cir. 2007) (citation and internal quotation marks omitted).  In considering whether a complaint states a claim, a court must accept as true all of the material factual allegations in it.  Hamilton v. Brown, 630 F.3d 889, 892-93 (9th Cir. 2011).  However, the Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (citation and internal quotation marks omitted).

Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and internal quotation marks omitted).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citation and internal quotation marks omitted).  The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Woods v. Carey, 525 F.3d 886, 889-90 (9th Cir. 2008) (citations and internal quotation marks omitted).  The Court has "an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt."  Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation and internal

1  quotation marks omitted).  If, however, a court finds that a <u>pro se</u> complaint has

2  failed to state a claim, dismissal may be with or without leave to amend.  <u>Lopez v.</u>

3  <u>Smith</u>, 203 F.3d 1122, 1126-30 (9th Cir. 2000).

4                                              **IV.**

5                                    **<u>DISCUSSION</u>**

6  **THE SDWA PREEMPTS PLAINTIFFS' CIVIL RIGHTS CLAIMS UNDER**

7                          **SECTIONS 1983 AND 1985(3)**

8  **A.    STATUTORY PREEMPTION GENERALLY**

9              In determining whether a statute preempts a Section 1983 claim, "[t]he

10  crucial consideration is what Congress intended."  <u>City of Rancho Palos Verdes,</u>

11  <u>Cal. v. Abrams</u>, 544 U.S. 113, 120, 125 S. Ct. 1453, 161 L. Ed. 2d 316 (2005).

12  "When the remedial devices provided in a particular Act are sufficiently

13  comprehensive, they may suffice to demonstrate congressional intent to preclude

14  the remedy of suits under § 1983."  <u>Middlesex Cty. Sewerage Auth. v. Nat'l Sea</u>

15  <u>Clammers Ass'n</u>, 453 U.S. 1, 20, 101 S. Ct. 2615, 69 L. Ed. 2d 435 (1981).

16  Additionally, where Congress enacts a statute containing "an express, private

17  means of redress in the statute itself," the Court must infer "Congress did not

18  intend to leave open a more expansive remedy under § 1983."  <u>Abrams</u>, 544 U.S. at

19  121; <u>see</u> <u>Middlesex Cty. Sewerage Auth.</u>, 453 U.S. at 20 ("It is hard to believe that

20  Congress intended to preserve the § 1983 right of action when it created so many

21  specific statutory remedies, including the two citizen-suit provisions.").  Similarly,

22  a statute preempts a Section 1985(3) claim where Congress expresses intent for the

23  statute to preempt the claim.  <u>Great Am. Fed. Sav. & Loan Ass'n v. Novotny</u>, 442

24  U.S. 366, 375-76, 99 S. Ct. 2345, 60 L. Ed. 2d 957 (1979) (holding Title VII

25  preempted a Section 1985(3) claim because "[i]f a violation of Title VII could be

26  asserted through § 1985(3), a complainant could avoid most if not all of these

27  detailed and specific provisions of the law").

28  ///

                                              5

**B.      SDWA PREEMPTION**

Here, the SDWA establishes "national primary drinking water regulations," which "shall apply to each public water system in each State."  42 U.S.C. § 300g. The SDWA requires the Environmental Protection Agency Administrator ("Administrator") to "publish maximum contaminant level goals and promulgate, by rule, national primary drinking water regulations"  Id. § 300g-1.  The SDWA further establishes "an elaborate enforcement scheme," including that the Administrator may bring a civil action to compel SDWA compliance orders against violators of the SDWA.  Mattoon v. City of Pittsfield, 980 F.2d 1, 5 (1st Cir. 1992) (citing 42 U.S.C. § 300g-3(b), (g)(1)).  In addition, citizens may initiate enforcement proceedings against SDWA violators and the Administrator for failure to perform any non-discretionary duty under the SDWA.  42 U.S.C. § 300j-8.

The SDWA's establishment of an "express, private means of redress" demonstrates Congress did not intend to leave open a more expansive remedy" under Section 1983 or 1985(3).  See Abrams, 544 U.S. at 121.  Hence, "the SDWA evinces a clear congressional intention to entrust the regulation of public drinking water systems to an expert regulatory agency rather than the courts."  Mattoon, 980 F.2d at 4-5.  Accordingly, the SDWA preempts all other forms of federal relief for SDWA violations – including claims under Sections 1983 and 1985(3).  Id. at 4 ("We have little hesitation in concluding that Congress occupied the field of public drinking water regulation with its enactment of the SDWA."); see Ford v. California, No. 1:10-CV-00696-AWI, 2013 WL 1320807, at *3 (E.D. Cal. Apr. 2, 2013) ("The SDWA preempts all other forms of federal relief for a violation of the SDWA, including . . . Section 1983 Constitutional right claims."); Boler v. Early, No. 16-10323, 2016 WL 1573272, at *3 (E.D. Mich. Apr. 19, 2016) (holding the SDWA preempts claims under Sections 1983 and 1985(3)).

///

///

C.   APPLICATION

Here, Plaintiffs allege Defendant poisoned the water beneath Plaintiffs' real property, "the only source of ground drinking" water.  Dkt. 28, FAC at 12. Plaintiffs allege Defendant injected uranium and arsenic "way over the Federal and State EPA's legal limits" into Plaintiffs' groundwater.  Id.  However, the SDWA preempts Plaintiffs' claims under Sections 1983 and 1985(3).  See Mattoon, 980 F.2d at 4; Ford, 2013 WL 1320807, at *3; Boler, 2016 WL 1573272, at *3.  In fact, the SDWA specifically regulates the precise harm Plaintiffs allege – contaminants in public water systems that fail to comply "with any national primary drinking water regulation or may otherwise adversely affect the health of persons."  42 U.S.C. § 300h.  Hence, because Congress intended the SDWA to govern compliance "with any national primary drinking water regulation," the SDWA preempts Plaintiffs' Section 1983 and 1985(3) claims.  See id.

Plaintiffs argue the SDWA has no preemptive effect on their Section 1983 or 1985(3) claims because "[t]his action ha[s] nothing to do with 'citizens suit' nor with Safe Drinking Water Act."  Dkt. 28, FAC at 6.  However, merely omitting nominal reference to the SDWA does not change the fact that the SDWA preempts the substance of Plaintiffs' civil rights claims.  See Zombro v. Baltimore City Police Dep't, 868 F.2d 1364, 1366 (4th Cir. 1989) (finding the Age Discrimination in Employment Act preempted plaintiff's civil rights claims, even where plaintiff declined to bring his action under the Age Discrimination in Employment Act).  If the Court allowed Plaintiffs to enforce the SDWA behind a Section 1983 or 1985(3) cloak, Plaintiffs could sidestep Congress' intent to require Plaintiffs give notice to prospective defendants of their allegedly unlawful conduct and provide prospective defendants sixty-days to address their error.  See 40 C.F.R. § 135.12; see also Great Am. Fed. Sav. & Loan Ass'n, 442 U.S at 376 (finding Title VII preempted Section 1985(3) claim because if not, "complainant could completely bypass the

1    administrative process, which plays such a crucial role in the scheme established by
2    Congress in Title VII").

3         Plaintiffs also argue the SDWA has no preemptive effect on their Section
4    1983 or 1985(3) claims because Defendant allegedly poisoned their private well and
5    the SDWA "is only applicable to Public Water System and not to Private Domestic
6    Water Well of the Plaintiffs who are not Public Water System owners and/or
7    operators." E.g., Dkt. 34, Opp. at 6.  However, while the SDWA regulates only
8    "public water systems," the SDWA defines a "public water system" as a system
9    that has "at least fifteen service connections or regularly serves at least twenty-five
10   individuals."  42 U.S.C. § 300f.[3]  Because Plaintiffs allege Defendant poisoned
11   underground water in an aquifer with "25 connections" to "the Public Water
12   System," Plaintiffs have conceded the aquifer is a "public water system" within
13   the scope of the SDWA.  Dkt. 34, Opp. at 5.

14        Accordingly, the SDWA preempts Plaintiffs' civil rights claims under
15   Sections 1983 and 1985(3), and Plaintiffs' Section 1983 and 1985(3) claims must be
16   dismissed.  See Mattoon, 980 F.2d at 4.

17   ///
18   ///
19   ///
20   ///
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27
28

---

[3]    Further, a legislative report states the SDWA regulates any "public water system . . . regardless of whether the system is publicly or privately owned or operated." H.R. Rep. No. 93-1185 at 16 (1974).

8

# V.

## ORDER

Therefore, the Court ORDERS as follows:

Defendant's Motion to Dismiss the FAC is GRANTED.  In light of Plaintiffs' pro se statuses and because it is unclear whether leave to amend would be futile, the Court DISMISSES the FAC with leave to amend.  See Lopez, 203 F.3d at 1126-30.

Within **twenty-one (21) days** of this order, Plaintiffs must act according to one of the following options:

**1.     PLAINTIFFS MAY FILE A SECOND AMENDED COMPLAINT**

If Plaintiffs choose to file a Second Amended Complaint, Plaintiffs must clearly designate on the face of the document that it is the "Second Amended Complaint," it must bear the docket number assigned to this case, and it must be retyped or rewritten in its entirety.  Plaintiffs shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the FAC. In addition, the Second Amended Complaint must be complete without reference to the Complaint, FAC, or any other pleading, attachment, or document.  Plaintiffs must comply with Central District of California Local Rules.

An amended complaint supersedes the preceding complaint.  Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  After amendment, the Court will treat all preceding complaints as nonexistent.  Id.  Because the Court grants Plaintiffs leave to amend as to all their claims raised here, any claim raised in a preceding complaint is waived if it is not raised again in the Second Amended Complaint.  Lacey v. Maricopa Cnty., 693 F.3d 896, 928 (9th Cir. 2012).

The Court warns Plaintiffs that it generally will not be well-disposed toward another dismissal with leave to amend if Plaintiffs file a Second Amended Complaint that continues to include claims on which relief cannot be granted.  The Court has already granted Plaintiffs opportunities to state their claims and

identified Plaintiffs' pleading deficiencies. "[A] district court's discretion over amendments is especially broad 'where the court has already given a plaintiff one or more opportunities to amend his complaint.'" Ismail v. County of Orange, 917 F. Supp.2d 1060, 1066 (C.D. Cal. 2012) (citations omitted); see also Ferdik, 963 F.2d at 1261. Thus, if Plaintiffs file a Second Amended Complaint without claims on which relief can be granted, the Second Amended Complaint will be dismissed without leave to amend and with prejudice. See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996) (denial of leave to amend is not an abuse of discretion where further amendment would be futile); see also Robinson v. California Bd. of Prison Terms, 997 F. Supp. 1303, 1308 (C.D. Cal. 1998) ("Since plaintiff has not, and cannot, state a claim containing an arguable basis in law, this action should be dismissed without leave to amend; any amendment would be futile.") (internal citations omitted).

Plaintiffs are explicitly cautioned that failure to timely file a Second Amended Complaint will result in this action being dismissed for failure to prosecute and/or obey Court orders pursuant to Federal Rule of Civil Procedure 41(b).

**2.    PLAINTIFFS MAY VOLUNTARILY DISMISS THIS CASE**

Alternatively, Plaintiffs may request voluntary dismissal of this case. Fed. R. Civ. P. 41(a). If Plaintiffs choose this option, this action will be dismissed in its entirety without prejudice. **The Clerk of Court is directed to mail Plaintiffs a blank Notice of Dismissal Form.**

Dated: August 02, 2016

_____
HONORABLE KENLY KIYA KATO
United States Magistrate Judge

10